JEFFRIES *v.* STATE, USE OF WOODRUFF COUNTY.

4-8276                                              205 S. W. 2d 194

Opinion delivered November 3, 1947.

*W. J. Dungan,* for appellant.

*J. Ford Smith,* for appellee.

Ed F. McFaddin, Justice. The question here is the validity of a condition subsequent in a deed to a county.

On October 28, 1928, appellant, E. E. Jeffries (joined with his wife, who relinquished her dower and homestead), executed, acknowledged and delivered to Wood-

ruff county, Arkansas, a deed which—omitting signatures, description, dower clause, date and acknowledgement (and with italics our own)—reads as follows:

"Know All Men By These Presents:—

"That we, E. E. Jeffries and Willie Jeffries, his wife, for and in consideration of the sum of thirty-two hundred and fifty ($3,250) dollars, paid by Woodruff County, Arkansas, as follows, to-wit: Thirty-two hundred and fifty dollars, cash in hand (the receipt of which is hereby acknowledged), the above price being on a basis of $100 per acre.

"It is understood between the parties hereto, that this conveyance is made to Woodruff county, Arkansas, *only to be used for county purposes and should the same be at any time abandoned for county purposes, the same shall revert in fee simple to the grantors making this conveyance,* grant, bargain and sell unto the said Woodruff county, Arkansas, and unto its assigns forever, the following lands lying in the County of Woodruff and State of Arkansas, to-wit: (description of the 32½ acres).

"To have and to hold the same unto the said Woodruff county, Arkansas, as above set out and unto its assigns forever, with all appurtenances thereunto belonging, as above set out for county purposes. And we hereby covenant with the said County of Woodruff in State of Arkansas that we will forever warrant and defend the title to said lands against all claims whatever, and that said lands are free from all liens and incumbrances."

The italicized language is the "condition subsequent" to which we will frequently refer in this opinion.

On January 24, 1947, the State of Arkansas, on the relation of J. H. Moody as prosecuting attorney, and for the use and benefit of Woodruff county, filed this action in the circuit court against E. E. Jeffries (his wife being deceased), alleging that the defendant had wrongfully entered the lands described in the said deed, and did wrongfully hold possession thereof, and prayed for possession and $3,250 for breach of warranty. By amend-

ment to the complaint it was alleged that the Woodruff county Quorum Court had authorized the purchase of the property in 1928 for courthouse purposes and other county purposes, and that the county judge had been authorized to pay the $3,250 to Jeffries only after the title should be "in all things fully approved and confirmed by proper deed"; and that the deed executed by Jeffries (as heretofore partially copied) did not comply with the said authorization because of the inclusion therein of the condition subsequent as heretofore italicized. Copies of the quorum court proceedings were made exhibits to the amendment.

By answer and amendment, the defendant pleaded the validity of said condition subsequent as contained in the deed, and defendant further alleged:

". . . that Woodruff county has wholly abandoned the use of the above lands for county purposes and they were in the possession and use of private persons throughout the entire year of 1946, without right or authority, and for this reason the defendant re-entered the lands on January 1, 1947, for the purpose of declaring a forfeiture to him as grantor of the lands under the condition subsequent which was broken, and the defendant now holds the lands and claims the reversion of the title to him because of the above facts." Defendant also alleged that before making this deed to Woodruff county in 1928, he had refused to sell the lands unless the said italicized language be placed in the deed; and that the attorney then representing Woodruff county had advised the defendant that said condition subsequent was in all things valid. Defendant also denied every material allegation in the plaintiff's pleadings, and prayed that the complaint and amendment be dismissed.

Plaintiff filed a general demurrer to the answer and amended answer. The circuit court sustained the demurrer; and, upon the defendant's refusal to plead further, a final judgment was entered, awarding the possession of the land to the plaintiff. From that judgment there is this appeal.

At the outset, we point out that we are not here concerned with the distinction between (1) an estate on condition subsequent, and (2) an estate subject to conditional limitation; because, in the case at bar, there was an actual re-entry. So we will continue to refer to the deed as creating a ''condition subsequent.'' We have upheld such a clause in deeds to individuals,[1] railroads,[2] religious organizations,[3] and school districts.[4] For cases on condition subsequent, see West's Arkansas Digest, ''Deeds,'' § 155. Generally, the rule is that the grantor has the right to impose a condition subsequent; and the party alleging invalidity, as violative of public policy, has the burden of establishing such invalidity. 18 C. J. 359, *et seq.*

But the appellee contends (1) that it is against public policy for a county to take title to property on condition subsequent, and (2) that the quorum court did not authorize the county judge to acquire the property by a deed other than a fee simple deed. We discuss these contentions.

I. *Is the Condition Subsequent in the Deed to the County Void as Against Public Policy?* The appellee answers the question in the affirmative; and, bottomed on that answer, says that the clause in the deed is void, and therefore the county received a fee simple title. Appellant says the condition subsequent is not against public policy. In *Woodruff* v. *Berry,* 40 Ark. 251, and again in *Paul* v. *Stuckey,* 126 Ark. 389, 189 S. W. 676, L. R. A. 1917B, 888, we had occasion to consider a definition of ''public policy'' as applicable to the facts in those cases. It is possible that since these cases, the words, ''public policy'' have experienced such an expansion in use and meaning that ''no exact and precise definition . . . can be found'' to fit all cases. (See 50 C. J. 858 and 13 C. J. 426). Concerning that possibility of an en-

---

[1] See *Goodwin* v. *Tyson,* 167 Ark. 396, 268 S. W. 15.

[2] See *Moore* v. *Sharpe,* 91 Ark. 407, 121 S. W. 341, 23 L. R. A., N. S. 937, and *St. L. S. F. Ry. Co.* v. *White,* 199 Ark. 56, 132 S. W. 807.

[3] See *Pettit* v. *Stuttgart Institute,* 67 Ark. 430, 55 S. W. 485, and *Johnson* v. *Lane,* 199 Ark. 740, 135 S. W. 2d 853.

[4] See *Steele* v. *Rural Special School District,* 180 Ark. 36, 20 S. W. 2d 316, and *Williams* v. *Kirby District,* 207 Ark. 458, 181 S. W. 2d 488.

larged definition, we need not speculate, because, at all events, the source of public policy has not changed; and in *Arlington Hotel* v. *Rector*, 124 Ark. 90, 186 S. W. 2d 622 we said: "The facts presented do not show that the contract between Rector and the old company violated any principle set forth in the Constitution and laws of the United States or of this State, nor in the decisions of their courts. These are the sources which must be consulted to determine an issue of public policy. *Vidal* v. *Girard's Executors*, 2 How. 127-197, 11 L. Ed. 205; Elliott on Contracts, § 651 and note; *Hartford Fire Ins. Co.* v. *Chicago, etc., Ry. Co.*, 62 Fed. 904 s.c., affirmed 17 C. C. A. 62, 30 L. R. A. 193; Greenhood on Pub. Policy, p. 1, rule 2 note." So, to determine public policy, we look to the Federal and State Constitutions, statutes and court decisions.

There is no claim by appellee that any federal constitutional or statutory provision or adjudicated case announces any controlling public policy applicable to the situation here. Nor is it contended that any provision of the State Constitution declares any public policy in this situation. But appellee does insist that certain state statutes and adjudicated cases declare—either expressly or by inference—that a condition subsequent in a deed to a county is void as against public policy. We proceed to examine these statutes and cases cited by appellee.

(a) Section 2395, Pope's Digest, relates to the deed for a new courthouse site to be tendered before a courthouse removal election can be ordered. This section has no application to the case at bar, because no courthouse removal election was alleged in the case at bar. For the same reason, the cases construing this section have no application here.

(b) Section 2456, Pope's Digest, says that, if there be no suitable ground for that purpose (*i. e.*, courthouse and jail, as mentioned in § 2451) belonging to the county, the commissioner of public buildings "shall select a proper piece of ground at the seat of justice, and may purchase or receive by donation a lot or lots of ground for that purpose, and shall take a good and sufficient

deed in fee simple for the same to the county, and shall make report of his proceedings to the court at its next term.''

If the deed in question was for the location of a courthouse or jail on the property—which defendant's answer denies—, then it is clear that Woodruff county in 1928 did not receive a fee simple deed. But the plaintiff did not allege that the report of the proceedings was made by the ''commissioner of public buildings'' at the next term of the county court. Even if we should say— which we do not—that the county judge could also be the ''commissioner of public buildings,'' still the plaintiff's pleadings did not bring the case within the purview of § 2456. Certainly the plaintiff below (appellee here) could not by demurrer to the answer avail himself of the provisions of the statute, when the allegations in the complaint were not sufficient to invoke such statute.

(c) Section 2477, Pope's Digest, is the applicable statute under the state of the record here before us. That section reads (with italics our own):

''All deeds, grants and conveyances made and duly acknowledged and recorded, as other deeds of conveyance, to any county or to the commissioners of any county or any other person, by whatever form of conveyance, for the use and benefit of any county, shall be good and valid, to all intents and purposes, to vest in such county, *in fee simple or otherwise,* all such right, title, interest, and estate as the grantor in any such deed or conveyance had at the time of the execution thereof in the lands conveyed and *was intended thereby to be conveyed.''*

This is the general statute on county ownership of lands, and the italicized portions clearly show that the county is authorized to take title to land ''in fee simple or otherwise''; and that the deed accepted by the county conveys what ''was intended thereby to be conveyed.'' In the case at bar, it is clear that a fee on condition subsequent was intended to be conveyed, rather than a fee simple.

This § 2477 shows a legislative recognition that a county may acquire property for general county purposes by deed that conveys less than the fee simple title; and this statute—instead of raising an inference that a deed to a county with a condition subsequent is void as against public policy—leads inevitably to the conclusion that the public policy, as declared by the Legislature in the said statute, is to the effect that in general property matters (as distinct from §§ 2395 and 2456, a condition subsequent in a deed to a county is in accordance with public policy and not void as against public policy.

(d) The only two Arkansas cases cited by appellee as involving a deed to a county with a condition subsequent are *Skipwith* v. *Martin,* 50 Ark. 141, 6 S. W. 514, and *State* v. *Baxter,* 50 Ark. 447, 8 S. W. 188. In the Skipwith case, Pulaski county had accepted for a jail location a deed which contained a condition subsequent. The case was decided on another issue, rather than the validity of the condition; but the court, by way of clarification, said:

"If this is a condition at all, it must be agreed that it is a condition subsequent. Such a condition does not prevent the vesting of the title. The question of performance or nonperformance of a condition subsequent could interest no one but the grantors, whom the appellants in this case do not pretend to represent. *Schulenberg* v. *Harriman,* 21 Wall. 44; 4 Kent's Com. 131.''

In *State* v. *Baxter* the federal government had deeded certain lands to Garland County for courthouse and jail purposes. The opinion merely mentioned the reverter clause in this language:

"Whether the title was subject to be divested by the failure of the grantee to use it as a site for public buildings, or not, is a question not now presented for decision. The United States only can take advantage of such failure, if anyone can. *Martin* v. *Skipworth,* 50 Ark. 141, 6 S. W. 514.''

These cases are far from announcing any public policy forbidding a county from accepting *for general*

*county purposes* a deed with condition subsequent, and are far from declaring void any such language in the deed. We therefore conclude that no public policy is offended in the case at bar under the state of the record before us, *i. e.*, on demurrer to an answer, which denies the allegations in the complaint.

II. *The Authority of the County Judge Under the Orders of the Quorum Court.* Appellee contends that the county judge had no authority from the quorum court to accept less than a fee simple title. That allegation may or may not be true; but it does not alter the fact that the answer alleges and the demurrer admits that the county judge, on advice of his attorney, did accept the deed here involved. Whether the county judge exceeded his authority, and, if so, the effect thereof on this transaction—these are matters which may be considered on the merits, rather than on a demurrer to the defendant's answer.

We conclude that the judgment of the circuit court sustaining the demurrer and rendering judgment for the plaintiff should be, and is, reversed at the cost of the appellee. We remand the cause with directions to overrule the demurrer and proceed not inconsistently with this opinion.